### E. S. FAIN v. STATE.

No. A-2759.   Opinion Filed August 17, 1918.

(174 Pac. 296.)

1. **PUNISHMENT—Assessment by Jury—Time.** Where the conviction is for manslaughter in the first degree, and the jury has returned its verdict of guilty into court, including in said verdict the statement that the punishment cannot be agreed upon, and such verdict is announced in open court, it is then too late for the defendant to request that the jury assess the punishment.

2. **APPEAL AND ERROR—Assignments of Error—Record.** Assignments of error must be clearly supported by the record; otherwise this court may not consider same.

3. **APPEAL AND ERROR—Exclusion of Evidence—Record.** Where it is alleged that the court refused to admit certain written evidence over the objection and exception of the defendant, it is necessary that such evidence be incorporated in the record, either as an exhibit, or by a showing that an offer was made to prove thereby certain facts material to the issues, and where this is not done, but the record is entirely silent as to the contents of such writing, this court will not disturb a judgment of conviction upon the ground that such written evidence was improperly rejected.

*Appeal from District Court, Sequoyah County;*
*John H. Pitchford, Judge.*

E. S. Fain was convicted of manslaughter in the first degree, and his punishment fixed at imprisonment in the state penitentiary for a period of ten years, and he appeals.   Affirmed.

*Frye & Frye,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J.   It is contended that the court erred in refusing to require the jury to assess the punishment upon a request of the defendant.   Sections 5933 and 5934, Rev. Laws 1910, are as follows:

"In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and shall upon the request of the defendant, assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render judgment accordingly."

The record discloses that there was no request made to require the jury to assess the punishment until after the following verdict was returned:

"We, the jury drawn and impaneled and sworn in the above-entitled cause, do upon our oaths find defendant, E. S. Fain, guilty of manslaughter in the first degree; we can't agree on the punishment, as charged in the information herein."

The request made of the court that the jury assess the punishment came too late. It is clear: (1) That the request must come before the verdict is returned; (2) that the exception named in section 5934 permits the jury to return a general verdict of guilty, and that they cannot agree upon the punishment, if no request that the jury assess the punishment is made before the verdict is returned. The court, then, was authorized to pronounce judgment upon the verdict as returned. In *Blair v. State*, 4 Okla. Cr. 359, 111 Pac. 1003, in construing the identical statutes, this court said:

"The jury returned a verdict finding the defendant guilty of manslaughter in the first degree, but not fixing the punishment. Upon this verdict the court sentenced the

defendant to be imprisoned in the state penitentiary at hard labor for a term of 15 years. And it is urged that, inasmuch as the jury by its verdict assessed no punishment for the offense, the court could impose none. But sections 1 and 2 of an act of the Legislature approved May 12, 1908 (Snyder's Comp. Laws, secs. 2028, 2029), provide as follows:

" 'Sec. 1. In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may and shall upon request of the defendant, assess and declare the punishment in their verdict and the court shall render a judgment according to such verdict, except as hereinafter provided.'

" 'Sec. 2. Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly.'

"The jury having failed to agree upon the punishment to be inflicted, or at least not having declared the same in their verdict, it therefore became the duty of the court under the statute to 'assess and declare the punishment and render judgment accordingly,' and the court committed no error in so doing."

In the Blair Case, as in this, no request was made of the court before the verdict that the jury assess the punishment, yet it was held that the trial court had jurisdiction to pronounce judgment upon the verdict there rendered. We see no ambiguity in the statutes aforesaid. In order that the jury may assess the punishment in the verdict at the request of the defendant, that request must come before the verdict is rendered; otherwise it is too late. There is no merit in this contention.

The cases of *Oelke v. State,* 10 Okla. Cr. 51, 133 Pac. 1140, and *McSpadden v. State,* 8 Okla. Cr. 490, 129 Pac.

72, are not in point. Those cases are distinguishable from this, in that the request was made to require the jury to assess the punishment before the jury retired to consider the verdict, and the error there pointed out was in receiving a verdict that did not assess the punishment or state the inability of the jury to agree upon the same.

In *Dew v. State,* 8 Okla. Cr. 57, 126 Pac. 592, the court refused to instruct the jury to assess the punishment in the verdict, although the request was made before the jury retired to consider the verdict. This was held to be error, but the proceedings in this case are entirely different from either of said cases, as herein indicated.

Certainly it was not intended by the foregoing enactment to permit a person tried for crime, where the jury unanimously agreed upon guilt, to entirely escape punishment solely because the jury was unable to agree on the extent thereof. The exception contained in section 5934, *supra,* clearly indicates the contrary intention.

It is also contended that the court erred in admitting the testimony of certain witnesses relative to the reputation of deceased for quietude and as an inoffensive man, for the reason that such witnesses did not show themselves qualified to testify. This issue was properly raised in the case, and it is only necessary to quote from the record of the testimony of one of the witnesses in order to elucidate the question, as the record concerning the testimony of the other witnesses is substantially the same as that concerning G. W. Frazier's, which we quote as follows:

"Q. What is your name? A. G. W. Frazier. Q. Did you know Lloyd Johns in his lifetime? A. Yes, sir; a while. Q. How long did you know him? A. About two years, I reckon. Q. Are you acquainted in the neighbor-

hood in which he lived for that time? A. Well, most of the time; yes, sir. Q. I will ask you if you know his general reputation during that time in the community there as to being a peaceable, harmless, and inoffensive man? A. He was while he lived around me. (The defendant objects to the answer, and asks that it be stricken for the reason that it is not responsive and is incompetent.)

"The Court: The question was, Are you acquainted with his general reputation?—what the people generally say in the community where he lived. Now, answer that question yes or no.

"Mr. Allen: Q. Answer yes or no. Did you know his general reputation in the community in which he lived for being a peaceable, harmless, and inoffensive man? A. Yes, sir; he was. Q. You know his reputation? A. Yes, sir. Q. Was that reputation good or bal? A. It was good as far as I ever heard.

"Mr. Frye: Q. You say it was good as far as you know? A. It was good as far as I ever heard.

"Mr. Frye: We renew our objection, and move to strike this testimony, for the reason that he is testifying from his own knowledge, and not the reputation he bore here in the community. (The objection and motion are overruled by the court, to which the defendant excepts.)"

The objection urged as stated is clearly without merit, because it is apparent that these witnesses were testifying to knowledge of the reputation of the deceased, and not as to personal acquaintance with the man himself. We are of the opinion, therefore, that the record does not support the grounds upon which these various assignments of error are based.

It is also contended that the court erred in refusing to admit in evidence a certain letter alleged to have been written by the deceased to the defendant's wife a short

time before the homicide. The record on this subject is as follows: · ·

"Q. What is your name? A. Fain. Q. Have you been sworn as a witness in this case? A. Yes, sir. Q. You are the wife of the defendant, Lige Fain? A. Yes, sir. Q. I will ask you, Mrs. Fain, if a few days prior to the killing you received a letter through the mails? A. Yes, sir. Q. (hands her a paper). You may look at that. A. Yes, sir; that is the one. Q. Is that what was in the envelope, the letter? A. Yes, sir, I believe it is. Q. Well, do you know it is? A. Yes, sir, I know it is.

"Mr. Frye: We desire to introduce this letter in testimony.

"Mr. Allen: We object to the introduction of that in evidence, for the reason that it is incompetent, irrelevant, and immaterial and inadmissible as evidence. (The objection is sustained by the court, to which the defendant excepts.) * * * Q. What is your name? A. Martha Fain. Q. You are the same Mrs. Fain that was on the stand yesterday evening in this cause? A. Yes, sir. Q. The letter that you say you received through the mail, please tell the jury where it was the morning Lige Fain killed Lloyd Johns? A. Lige had it in his pocket. Q. Your husband had it? A. Yes, sir."

The contents of the letter are nowhere shown by the record, nor was any offer made by counsel for defendant to prove any particular facts by the introduction of such evidence. It is impossible, therefore, to determine the merits of this controversy. The burden was upon the plaintiff in error to show that the refusal of the court to admit this letter operated to his prejudice, and he should have offered it in evidence and had it incorporated in the record, or made an offer to prove certain material facts thereby, had it been desired that this court pass upon the question here raised. In the absence of any such show-

ing, the judgment of conviction will not be disturbed on such ground.

After a full and fair consideration of the evidence in the case, we are clearly of the opinion that the sentence pronounced is not excessive, and that there is no prejudicial error such as would authorize this court to reverse the judgment, and the same is therefore affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.